IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

TOMAS A. HERNÁNDEZ-RIVERA,

    Plaintiff,

                v.                CIVIL NO. 15-1628 (PAD)

COOPERATIVA DE AHORRO Y CRÉDITO,
ET AL.,

    Defendants.

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

Plaintiff Tomás Hernández-Rivera complains that Trans Union – a consumer reporting agency– included in his credit report two inquiries resulting from loan applications his father, Tomás Hernández-Aldarondo, submitted to two credit unions, Cooperativa de Ahorro y Crédito de la Universidad de Puerto Rico ("Universicoop") and Cooperativa de Ahorro y Crédito Empleados Municipales de Guaynabo ("Municoop")(Docket No. 7).[1]  Before the court is Trans Union's "Motion for Summary Judgment" (Docket No. 39), which plaintiff opposed (Docket No. 46).  For the reasons stated below, the motion for summary judgment is GRANTED and the case DISMISSED.

---

[1] The original complaint identified Universicoop and Municoop as defendants (Docket No. 1). The Amended Complaint added "Trans Union LLC" and "Trans Union de Puerto Rico" (jointly referred to in this Opinion as "Trans Union") (Docket No. 7) as defendant.  On August 24, 2015, the court granted Universicoop's motion to dismiss for improper joiner (Docket No. 29).  On April 1, 2016, it dismissed the case against Municoop following a Stipulation of Dismissal with Prejudice (Docket No. 52).  Partial judgments were entered accordingly (Docket Nos. 30 and 54, respectively).

Case 3:15-cv-01628-PAD   Document 59   Filed 09/29/16   Page 2 of 9

Tomás A. Hernández-Rivera v. Cooperativa de Ahorro y Crédito Empleados Municipales de Guaynabo, *et al.*
Civil No. 15-1628 (PAD)
Opinion and Order
Page 2

## I.   BACKGROUND[2]

Plaintiff's father applied for loans in Universicoop and Municoop. Universicoop requested Mr. Hernández-Aldarondo's credit information, providing Trans Union with the following inquiry:

> Name: Hernández/Aldarondo, Tomas
> Address: 11 Urb. Apolo 71, Calle Minerva,
> Guaynabo, PR 00969-5001
> SSN: XXX-XX-6173.[3]

No information as to the applicant's date of birth was included in the request. See, Docket No. 39-2, Trans Union's "Statement of Uncontested Material Facts in Support of Motion for Summary Judgment" ("SUMF") at ¶¶ 16 and 18. In response, TransUnion selected two files:

File A

> Hernández/Aldarondo, Tomas
> 969 Calle Minerva, Guaynabo, PR 00969
> 969 Calle Minerva, Guaynabo, PR 00969
> XXX-XX-6173
> DOB: 01/27/1959
> PID: 90002D15A623

File B

> Hernández, Tomas A.
> 969 Calle Minerva, Guaynabo, PR 00969
> 982 Calle San Carlos, Carolina, PR 00982
> XXX-XX-5544
> DOB: 03/27/1987
> PID: B0FAE820C942[4]

Similarly, Municoop made the following inquiry:

> Name: Hernandez/Aldarondo, Tomas

---

[2] The parties agree as to most of the facts, but attribute different legal consequences to them.

[3] Only the last 4 digits of the Social Security Number are included herein for security purposes. It is uncontested, however, that the complete number was informed to Trans Union.

[4] Trans Union claims, and plaintiff does not contradict, that had Universicoop included the applicant's date of birth, File B would not have been selected or furnished (Docket No. 40-1 at ¶ 6).

Case 3:15-cv-01628-PAD   Document 59   Filed 09/29/16   Page 3 of 9

Tomás A. Hernández-Rivera v. Cooperativa de Ahorro y Crédito Empleados Municipales de Guaynabo, *et al.*
Civil No. 15-1628 (PAD)
Opinion and Order
Page 3

>   Address: 11 Reparto Apolo 71 Minerva,
>   Guaynabo, PR 00969
>   SSN: XXX-XX-6173.[5]

Like Univercoop, Municoop did not include the applicant's date of birth. SUMF at ¶¶ 17 and 18.

TransUnion identified two files:

>   File A
>
>   >   Hernandez/Aldarondo, Tomas
>   >   969 Calle Minerva, Guaynabo, PR 00969
>   >   969 Calle Minerva, Guaynabo, PR 00969
>   >   XXX-XX-6173
>   >   DOB: 01/27/1959
>   >   PID: 90002D15A623
>
>   File B
>
>   >   Hernandez, Tomas A.
>   >   969 Calle Minerva, Guaynabo, PR 00969
>   >   982 Calle San Carlos, Carolina, PR 00982
>   >   XXX-XX-5544
>   >   DOB: 03/27/1987
>   >   PID: B0FAE820C942.[6]

Plaintiff found out about both inquires through a credit monitoring platform, Credit Karma (Docket No. 39, Exh. No. VI at pp. 14-15), and initiated this action claiming Trans Union violated the Fair Credit Reporting Act ("FCRA") by making inquiries into his credit report. He claims Trans Union did not have reasonable grounds to believe the consumer reports were to be used in connection with a credit transaction involving him, and posits that Trans Union's failure was willful because it did not implement or maintained reasonable procedures to ensure plaintiff's consumer credit information would not be disclosed (Docket No. 7 at ¶¶ 1, 67-72). Trans Union

---

[5] As previously explained, only the last 4 digits of the Social Security Number are included herein for security purposes. It is uncontested, however, that the complete number was informed to Tran Union.

[6] As with the inquiry made by Universicoop, Trans Union claims, and plaintiff does not contest, that had Municoop included the applicant's date of birth, File B would have not been selected or furnished (Docket No. 40-1 at ¶ 10).

Case 3:15-cv-01628-PAD   Document 59   Filed 09/29/16   Page 4 of 9

Tomás A. Hernández-Rivera v. Cooperativa de Ahorro y Crédito Empleados Municipales de Guaynabo, *et al.*
Civil No. 15-1628 (PAD)
Opinion and Order
Page 4

counters plaintiff's consumer report was furnished for a permissible purpose, and that it maintained reasonable procedures to ensure consumer reports would only be obtained for permissible purposes (Docket No. 39).

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is need for trial. Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991).

The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A factual dispute is "genuine" if it could be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). It is "material" if it potentially affects the outcome of the case in light of applicable law. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting facts that demonstrate a genuine issue of material fact for trial. LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). All reasonable factual inferences must be drawn in favor of the party against whom summary judgment is sought. Shafmaster v. United States, 707 F.3d. 130, 135 (1st Cir. 2013).

Case 3:15-cv-01628-PAD   Document 59   Filed 09/29/16   Page 5 of 9

Tomás A. Hernández-Rivera v. Cooperativa de Ahorro y Crédito Empleados Municipales de Guaynabo, *et al.*
Civil No. 15-1628 (PAD)
Opinion and Order
Page 5

### III.    DISCUSSION

Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking systems, and protect consumer privacy. Chiang v. Verizon New England, Inc., 595 F.3d 26, 34 (1st Cir. 2010)(quoting, Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007)(other internal citations omitted).  Its enactment followed a recognition of abuses in the burgeoning credit reporting industry. Id.

Under Section 1681e(a) of the FCRA, every consumer reporting agency shall maintain reasonable procedures designed to limit disclosures of consumer credit reports to the permissible purposes listed in Section 1681b.[7]  These procedures include requiring "prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose." 15 U.S.C. § 1681e(a).  The FCRA enforces this duty by imposing civil liability upon a person or entity that willfully obtains a credit report for a purpose that is not authorized by the statute. 15 U.S.C. § 1681n(a).

A plaintiff may recover actual damages for negligent violations, 15 U.S.C. §1681o(a)(1), and actual or statutory and punitive damages for willful ones, id. § 1681n(a)(1)-(2); Pérez v. Portfolio Recovery Associates, LLC, 2012 WL 5373448, *1 (D.P.R. October 30, 2012). To prove a violation of section 1681b, a plaintiff must show that credit information was obtained for an impermissible purpose.  A showing of a permissible purpose is a complete defense.

---

[7] Section 1681e(a), titled "Identity and purposes of credit users," provides as follows: Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 1681c of this title and to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title."

Tomás A. Hernández-Rivera v. Cooperativa de Ahorro y Crédito Empleados Municipales de Guaynabo, *et al.*
Civil No. 15-1628 (PAD)
Opinion and Order
Page 6

Stonehart v. Rosenthal, 2001 WL 910771, *3 (S.D.N.Y. August 13, 2001)(citing, Advanced Conservation Sys. Inc. v. Long Island Lighting Co., 934 F.Supp. 53, 54 (E.D.N.Y. 1996)); Korotki v. Attorney Servs. Corp. Inc, 931 F.Supp. 1269, 1275 (D.Md. 1996), aff'd, 131 F.2d 135 (4th Cir. 1997)); see also, Pérez, 2012 WL 5373448 at *1 n.2 (citing, Stonehart with approval). The fact that a consumer report is furnished for an impermissible purpose does not, however, result in automatic liability. Dobson v. Holloway, 828 F.Supp. 975, 977 (M.D. Ga 1993). Liability is imposed only when the consumer reporting agency either willfully or negligently fails to maintain reasonable procedures to avoid violations of, *i.e*. Section 1681b. Id.

First, in conformity with Section 1681b, a consumer reporting agency may furnish a person's credit report: (i) to a person that, it has reason to believe, intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or (ii) "otherwise has a legitimate business need for the information," such as when the review of the account is needed "to determine whether the consumer continues to meet the terms of the account." 15 U.S.C. § 1681b(a)(3)(A) and (a)(3)(F), respectively. Trans Union furnished the information in question to Universicoop and Municoop, with which it had service agreements requiring the credit unions to comply with all the provisions of the FCRA, and certify that inquiries have been made only in connection of a credit transaction involving the consumer on whom the information is to be furnished. SUMF at ¶¶ 1 and 2. It acted within the scope of the statute.

Second, pursuant to the FCRA, consumer reporting agencies must maintain reasonable procedures to limit the furnishing of consumer reports to the purposes listed under § 1681b. 15 U.S.C. § 1681e(a). Those procedures include requiring "prospective users of the information to identify themselves, certify the purposes for which the information is sought, and certify that the

information will be used for no other purpose." Id. To determine whether the consumer reporting agency maintained reasonable procedures, the standard of conduct is what a reasonably prudent person would do under the circumstances. Dobson, 828 F.Supp. at 977 (internal citations omitted). Trans Union had in place a Subject Selection Process to determine which credit files were relayed or furnished to the inquiring parties.[8] These actions reflect reasonable efforts to verify the identity and the use for which Municoop and Universicoop intended to use the consumer reports.

Third, the information relayed to Trans Union (which included the address, the surname and last name) also appeared on plaintiff's credit file. Trans Union had a reason to believe that both Universicoop and Municoop intended to use the information requested in connection with a credit transaction involving the plaintiff and they had a legitimate request for the credit report. Plaintiff does not provide any evidence upon which it can be reasonably concluded that Trans Union had grounds to believe the information was to be obtained for an improper purpose. See, Wilson v. Sessoms, 1998 WL 35305548, *5 (M.D. North Carolina March 16, 1998)(and cases cited therein, showing summary judgment is appropriate in favor of a consumer reporting agency where subscriber had certified that it would access reports for permissible purposes and no showing was made to prove that the consumer reporting agency was aware that the subscriber was accessing reports for improper purposes).[9]

---

[8] Among the variables the Subject Selection Process takes into consideration are the last name, address, social security number and date of birth. Through algorithms, it first makes an initial selection, then match those files that meet certain criteria and gives these files a score. Based on the score, the file(s) may be qualified for a return. Additional comparisons are performed between the input and consumer file(s) that are eligible for a return in the previous step, and may disallow the previously qualified file(s) from being returned. If more than one consumer file is eligible for return, the files are sent to a Combined Process to assess combined eligibility.

[9] See also, Stergiopoulos v. First Midwest Bancorp, Inc., 427 F.3d 1043, 1046 (7th Cir. 2005)(observing that § 1681b "does not require that consumers expressly approve each request for a report," but is the *purpose* behind the inquiry that is determinative); Pérez, 2012 WL 5373448 at *2 (that defendant accessed plaintiff's credit report without his consent is not sufficient to engage the liability provisions of the FCRA)(citing,15 U.S.C. § 1681(a)).

Case 3:15-cv-01628-PAD   Document 59   Filed 09/29/16   Page 8 of 9

Tomás A. Hernández-Rivera v. Cooperativa de Ahorro y Crédito Empleados Municipales de Guaynabo, et al.
Civil No. 15-1628 (PAD)
Opinion and Order
Page 8

Fourth, even if the court were to assume, *arguendo,* that the credit file was furnished for an impermissible purpose, it would not find Trans Union liable. Plaintiff has not shown Trans Union's conduct was either willful or negligent. The mere fact that a consumer report is furnished for an impermissible purpose does not result in automatic liability. Liability is imposed only when the consumer reporting agency either willfully or negligently fails to maintain reasonable procedures to avoid violations of, i.e., § 1681b. At the time of the inquiries, Trans Union had supplied Municoop and Universicoop with credit reports over a 15-year period (in case of Universicoop) and 24 years (in the case of Municoop), without any demonstrable incident. And the record is devoid of any evidence from which the court can conclude Trans Union had a reason to believe that these entities would obtain a consumer report for an improper purpose; or that it deviated from the standard of care.[10] Hence plaintiff's claim against Trans Union fails.[11]

---

[10] See, Anderson v. Ray Brandt Nissan Inc., 1991 WL 211627, *1 (E.D.La. Oct. 9, 1991)(internal citation omitted)("It is reasonable for a consumer reporting agency to assume that the user of its services will utilize the credit information obtained for a proper purpose."); Boothe v. TRW Credit Data, 557 F.Supp. 66, 71 (S.D.N.Y. 1982)(It would be unreasonable to require credit reporting agencies processing a high number of requests to independently investigate each and every request to determine its legitimacy).

[11] In consequence, no actual or punitive damages are appropriate. Besides, no actual damages exist here. Plaintiff himself so admitted (SUMF ¶¶ 9-13). After the two inquiries appeared on plaintiff's credit report, he did not apply for any loan, mortgage, credit card, car loan or any other type of credit. SUMF at ¶ 9. Plaintiff has never been denied credit as a result of those two inquires, and the terms and conditions of his credit cards did not change; and there was no financial, business, commercial, or job opportunity loss, nor loss of opportunity of any kind. SUMF at ¶ 10, 11. Even more, plaintiff did not lose any sleep; his reputation was not affected; he did not suffer any household or family problems; and did not encounter any problem at work. SUMF at ¶ 12. (Plaintiff qualified this statement referring to his deposition testimony. Said testimony, however, confirms that he did not lose sleep but thought about those inquiries, their meaning, and how those could affect his credit score). In addition, he did not seek medical or professional help, and did not need medication. SUMF at ¶ 13. As to punitive damages, it is apparent they can only be recovered from a willful violator (see, 15 U.S.C. § 1681n), and the record shows no such violation. Yet the complaint states plaintiff suffered damages, and those damages include "without limitation, a significant expenditure of time and money, commercial impairment, inconvenience, embarrassment, humiliation and emotional distress including physical manifestations of such distress, over a period lasting longer than three months" (Docket No. 7 at ¶ 72). Under these circumstances, plaintiff shall show cause, not later than October 28, 2016, as to why the court should not grant Trans Union, reasonable attorney's fees under Section 1681n(c) of the FRCA.

Case 3:15-cv-01628-PAD   Document 59   Filed 09/29/16   Page 9 of 9

Tomás A. Hernández-Rivera v. Cooperativa de Ahorro y Crédito Empleados Municipales de Guaynabo, *et al.*
Civil No. 15-1628 (PAD)
Opinion and Order
Page 9

### IV.  CONCLUSION

On this record, there is no genuine issue of material fact.  Trans Union is entitled to judgment as a matter of law.  So its motion for summary judgment at Docket No. 39 is GRANTED, and plaintiff's claims against it are DISMISSED.

Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of September, 2016.

>  s/Pedro A. Delgado-Hernández
>  PEDRO A. DELGADO-HERNÁNDEZ
>  United States District Judge